Michael S. Taaffe, FL Bar No. 490318 (Admitted *Pro Hac Vice*)
SHUMAKER, LOOP & KENDRICK, LLP
240 South Pineapple Avenue, Post Office Box 49948
Sarasota, Florida 34230-6948
(941) 364-2720; FAX: (941) 366-3999
Mtaaffe@shumaker.com

Daniel S. Agle, Bar No. 251090
Gregory A. Garbacz, Bar No. 167007
KLINEDINST PC
501 West Broadway, Suite 1100
San Diego, California 92101
(619) 400-8000/FAX (619) 238-8707
DAgle@Klinedinstlaw.com
GGarbacz@Klinedinstlaw.com

Attorneys for Plaintiff
AMERIPRISE FINANCIAL SERVICES, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LPL FINANCIAL LLC,<br><br>        Plaintiff,<br><br>     v.<br><br>AMERIPRISE FINANCIAL SERVICES, LLC,<br><br>        Defendant. | Case No. 25-cv-0880-JO-MSB<br><br>**DEFENDANT AMERIPRISE FINANCIAL SERVICES, LLC'S OPPOSITION TO PLAINTIFF LPL FINANCIAL LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Judge:      Hon. Jinsook Ohta<br>Courtroom:  4C<br><br>Complaint Filed:  April 14, 2025<br>Trial Date:      None set |

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**I.      Introduction** ....................................................................................................... 1

**II.     Statement of Operative Facts** ........................................................................ 4

    *A.     Ameriprise's Franchise Agreement Does Not Permit Advisors To Retain Unlimited Amounts Of Customer Information Upon Departure* ............................. 4

    *B.     An Unauthorized Disclosure Occurred, Necessitating the Breach Notice, Which Was Appropriate* ................................................................................................ 6

        1.     LPL Tacitly Admits There Was A Breach ................................................. 7

        2.     All Of The Impacted Individuals Were Ameriprise Customers or Beneficiaries of Ameriprise Customers .......................................................... 7

        3.     The Customers Did Not Authorize Retention, Use, or Sharing Of The Information In Question ...................................................................................... 9

        4.     The Notice Is Truthful And Appropriate .................................................. 10

**III.    Legal Standard** .................................................................................................. 13

**IV.     Argument** ........................................................................................................... 15

    *1.     LPL Has Not Shown That It Is Likely To Succeed On The Merits Of Its Claims* .......................................................................................................................... 16

        A.     The Notice Was Not Defamatory ............................................................ 16

        B.     The Statements Within The Notice Are Privileged ................................ 17

        C.     The Notice Was Truthful, and Truth is an Ultimate Defense To A Defamation Claim ........................................................................................... 18

        D.     Ameriprise Did Not Tortiously Interfere With LPL's Customer Relationships ..................................................................................................... 20

    *2.     LPL Has Not Suffered, And Will Not Suffer, Irreparable Harm In The Absence Of An Injunction* ........................................................................................ 22

    *3.     The Balance of Equities Weighs In Favor Of Denying LPL's Motion For Temporary Restraining Order* ................................................................................. 24

    *4.     Entry Of An Injunction Would Not Serve The Public Interest* ...................... 24

**V.      Conclusion** ........................................................................................................ 24

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

## TABLE OF AUTHORITIES

**Page**

### CASES

*Amylin Pharms., Inc. v. Eli Lilly & Co.*, No. 11-CV-1061, 2011 ..............................14

*Bartholomew v. YouTube*, LLC (2017) 17 Cal.App.5th 1217, 1231, 225 Cal.Rptr.3d 917 .............................................................................................20

*Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)..........23

*Carver v. Bonds*, 135 Cal.App.4th 328, 344 (2005).....................................................18

*CI Games S.A. v. Destination Films*, No. 16-cv-05719, 2016 U.S. Dist. LEXIS 189118, at *35 (C.D. Cal. Oct. 25, 2016) ...........................................14

*Coltharp v. Herrera*, 584 F. App'x 334, 336 (9th Cir. 2014) .....................................14

*Dickinson v. Cosby*, 37 Cal. App. 5th 1138, 1160, 250 Cal. Rptr. 3d 350, 367 (2019) ..............................................................................................................19

*Easley v. Ameriprise Fin., Inc.,* 2020 WL 5881820, at *4 (D. Nev. Sept. 11, 2020)...............................................................................................................17

*Edo Reconnaissance & Surveillance Sys., Inc. v. Phoenix Logistics, Inc.*, No. 05-02789JF(PT), 2006 WL 2038058, at *9 (N.D. Cal. July 17, 2006) ..........21

*Erhart v. BofI Holding, Inc.* 612 F. Supp. 3d 1062, 1119 (S.D. Cal. 2020)................8

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) ......................................................................................14

*McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 112, 64 Cal. Rptr. 3d 467, 478 (2007) ...............................................................................................16

*Neary v. Regents of University of California* (1986) 185 Cal.App.3d 1136, 1147, 230 Cal.Rptr. 281 ................................................................................20

*Reed v. Gallagher*, 248 Cal. App. 4th 841, 855 (2016)...............................................18

*See Ameriprise Financial Services, LLC v. LPL Financial, LLC*, Docket No. 24-cv-01333-JO-MSB (S.D. Ca. Dec. 12, 2024) ..........................................1

*SIC Metals, Inc. v. Hyundai Steel Co.*, 442 F. Supp. 3d 1251, 1256 (C.D. Cal. 2020)................................................................................................................21

*Singleton v. Kernan*, No. 16-cv-02462, ....................................................................22

*Sony Gaming Networks & Customer Data Sec. Breach Litig.* 996 F. Supp. 2d 942, 966 (S.D. Cal. 2014)..........................................................................8

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

DEFENDANT AMERIPRISE FINANCIAL SERVICES, LLC'S OPPOSITION TO PLAINTIFF LPL FINANCIAL LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER

*Suzhou Angela Online Game Tech. Co. v. Snail Games USA, Inc.*, No. 21-cv-09552, 2022 ...........................................................................................14

*Swift & Co. v. Gray*, 101 F.2d 976, 980 (9th Cir. 1939) ...........................................17

*Takiguchi v. MRI Int'l, Inc.*, 611 F. App'x 919, 921 (9th Cir. 2015) ......................14

*Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008) ...........................................13

## **STATUTES**

15 U.S.C. § 6801 ...........................................................................................8

Cal. Civ. Code § 1798.81.5(b) ...............................................................8

Cal. Fin. Code § 4052.5 ...........................................................................8

Klinedinst PC
501 West Broadway, Suite 1100
San Diego, California 92101

DEFENDANT AMERIPRISE FINANCIAL SERVICES, LLC'S OPPOSITION TO PLAINTIFF LPL FINANCIAL LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER

# I.    **Introduction**

Plaintiff Ameriprise Financial Services, LLC ("Ameriprise"), by and through its undersigned counsel, hereby submits this Opposition to Plaintiff LPL Financial LLC's ("Plaintiff" or "LPL") Motion for Temporary Restraining Order. LPL comes to this Court to complain about a process to which it literally agreed in a Stipulated Order before this Court in a prior case.[1]

LPL's recitation of facts is woefully inaccurate and self-serving. LPL is simply attempting to shift the narrative away from what matters most—protecting customer data. The steps Ameriprise took to inform impacted individuals that their data had been shared without their authorization and contrary to Ameriprise's privacy policy were completely lawful and contemplated by this Court's Stipulated Order, again, to which LPL recently agreed.

The misrepresentations within the Complaint and the Memorandum of Points and Authorities ("Memorandum") are surprising, given that this Court is already intimately familiar with the facts of this case, having already heard the underlying dispute between these parties *see id.*[2]

As the Court will recall, Ameriprise brought its concerns regarding LPL's use of a spreadsheet called the "Bulk Upload Tool" before this Court in July of last year. At that time, the Bulk Upload Tool was alleged to contain myriad (yet largely unknown) categories of customer information taken and misappropriated by various registered representatives who resigned from Ameriprise to join LPL.  This Court—through a series of orders for the parties to meet and confer—ultimately required

[1] *See Ameriprise Financial Services, LLC v. LPL Financial, LLC*, Docket No. 24-cv-01333-JO-MSB (S.D. Ca. Dec. 12, 2024) (Dkt. 53).

[2] Ameriprise registers its objection to LPL's filing of a brand-new case in this Court given that the Court itself retained jurisdiction over disputes relating to the enforcement of the parties' Stipulated Order (see Paragraph 7 of that Stipulated Order), and this current dispute arises out of Paragraph 6 of that Stipulated Order. *See Ameriprise Financial Services, LLC v. LPL Financial, LLC*, Docket No. 24-cv-01333-JO-MSB (S.D. Ca. Dec. 12, 2024) (Dkt. 53).

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

LPL to, for the first time, reveal the identities of the thirty Bulk Upload Tool users.

Later, via the Stipulated Order agreed to by the parties and entered by this Court following yet more encouragement from the Court for the parties to meet and confer, LPL agreed to, among other things,[3] the production of all Bulk Upload Tools used by thirty advisors to abscond with extensive, sensitive customer information.

Importantly, for the purposes of this Opposition, LPL also agreed in the Stipulated Order that part of the purpose behind its production of the Bulk Upload Tool was "for the purpose of Ameriprise determining whether it must make notification to customers and what information to include in the notification to customers." *See id.* at 3. LPL also agreed to the Stipulated Order's requirement that "Ameriprise agrees to provide a copy of such notice to individuals who became customers of LPL, to LPL, and provide a date such notice is made if any."[4] Of course, prior to LPL's production of the Bulk Upload Tools on January 24, 2025, Ameriprise did not know the specific information taken by the advisors, nor the identities of the customers for whom information was taken. Any complaint by LPL that a data breach notification should not have been sent is therefore not credible, as LPL and Ameriprise, and even this court, contemplated the likelihood that Ameriprise would need to send a data breach notification letter, and that this letter could be sent to individuals who became customers of LPL, based on the very legitimate concerns raised by this Court.

At the parties' first hearing on the then-pending Motion for Preliminary Injunction, this Court stated: "I do see these massive third-party privacy concerns that do have irreparable harm to these individuals." Transcript of Hearing on Mot.

---

[3] *See generally*, Stipulated Order (Dkt. 53); *see also* Declaration of Michael S. Taaffe.

[4] Ameriprise complied with this requirement on April 8 via email transmission to counsel for LPL, Cheryl Haas.

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

1   for Preliminary Injunction at 20:24-25. The Court also stated: "I wouldn't want my

2   social security number or the holdings I have in certain companies and what trade

3   decisions that I've made out there." Transcript of Hearing on Mot. for Preliminary

4   Injunction at 13:7-9.

5          Those privacy concerns exist still. Ameriprise customers, whether current or

6   former, have a right, and would also be similarly concerned, to know that their

7   social security numbers and other extremely sensitive information were taken

8   without their prior authority and transmitted to a third party (not to mention that

9   these transmissions could have taken place using unsecured personal devices and

10  personal email accounts, and that the sensitive information may still be residing on

11  someone's unsecured personal device or email repository). But this was not

12  Ameriprise's determination alone.  Based on a good faith determination following a

13  careful review of the produced Bulk Upload Tools, Ameriprise had an obligation to

14  send a Notification of Data Breach ("Notice") under the state data breach laws of 47

15  states. Contrary to LPL's assertions, Ameriprise's Notice contains true and accurate

16  information, is not defamatory, and was not used as a litigation strategy.

17         LPL's arguments as to whether there was unauthorized disclosure, whether

18  this unauthorized disclosure constituted a breach, whether the advisors at issue were

19  allowed to take this voluminous information pursuant to certain contractual

20  agreements, whether the breach notice was appropriate, and others, are addressed

21  fully below. For the purposes of this Introduction, Ameriprise rejects LPL's

22  arguments and submits to this Court that LPL has not met—and cannot meet—the

23  very high burden to obtain the extraordinary remedy of a Temporary Restraining

24  Order, and therefore respectfully requests that the Court summarily deny LPL's

25  Motion.

26

27

28

DEFENDANT AMERIPRISE FINANCIAL SERVICES, LLC'S OPPOSITION TO PLAINTIFF LPL FINANCIAL
LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER

## II.     <u>Statement of Operative Facts</u>

### A. *<u>Ameriprise's Franchise Agreement Does Not Permit Advisors To Retain Unlimited Amounts Of Customer Information Upon Departure</u>*

LPL continues to parrot the notion that there is some separate "independent broker dealer space" that has its own rules. *See* Memorandum, at 2. This is false. Registered Representatives, whether they are independent contractors or employees, whether working for a broker-dealer or an RIA, are subject to the same FINRA, SEC, and state rules and regulations governing the protection of client information, and still must abide by relevant company policies.

Essentially, LPL states that "independent" advisors are allowed to take whatever confidential client information they want, with impunity. However, this is simply not the case.

Financial institutions must give their customers a "clear and conspicuous" written notice ("Privacy Notice") describing their privacy policies and practices. This Privacy Notice forms the permissions a customer gives regarding the sharing of their information with third parties. Ameriprise's client Privacy Notice clearly states, and has stated at all times relevant to this dispute, as follows:

> If your financial advisor's affiliation with Ameriprise ends and your financial advisor joins a nonaffiliated securities broker-dealer or registered investment advisor, they may be permitted to use limited information to contact you. <u>The information they may use is limited to your name, address, email address, phone number and account title</u>.

*See* Ameriprise Privacy Notice, [5] attached as Exhibit D to the Declaration of Michael S. Taaffe.

This is what the clients see. This is what the clients know. This is what the clients expect: that an Ameriprise advisor servicing their accounts will only take and

---

[5] Available at https://www.ameriprise.com/binaries/content/assets/ampcom/wcm/AMP_PRIVACY-NOTICE.PDF, at 2.

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

share these limited categories of client data ("Protocol Information") in the event they leave Ameriprise to join a new firm. While LPL might have its own contracts and privacy policies that differ and inform how they do business, that is LPL's prerogative. Ameriprise is not subject to LPL's contracts or policies.

Moreover, the language of the various addenda in the Franchise Agreements, for nearly twenty years, has been clear that the agreements themselves are subject to privacy policies, such as (and specifically) the one cited above, along with relevant laws. Over time, these addenda have been marked as Addendum 3-R (Rollout), Addendum 3-T (Employee to Franchise Transitions), and Addendum 3-V (Veteran Advisor Recruits) (together, the "Addenda").

Section 3 of the Addenda is entitled "Return of Complete Files and Proprietary Materials" and governs what a Registered Representative must do upon providing a notice of termination. This section, comprised of two short paragraphs, identifies a series of requirements a registered representative must fulfill to ensure compliance with Ameriprise's client privacy policies before the advisor's registration with Ameriprise ends.  A registered representative complies with Section 3 by returning all client files and all Ameriprise proprietary materials—both originals and copies— to a designated party within the advisor's local leadership. Starting in approximately 2007, Ameriprise clarified these requirements by adding the following sentence to Section 3 of the Addenda:

"Independent Advisor must comply with Ameriprise Financial's client privacy policy, including, but not limited to, provisions related to client

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

files, records and/or information."

Accordingly, for a registered representative to comply with Section 3, the advisor must adhere to Ameriprise's client privacy policy. This policy is published to customers and, as exhibited above, states that registered representatives can only take with them Protocol Information.

The amount and types of documents and information any advisor is allowed to retain for transition purposes at the time of their departure is (1) extremely limited and (2) always subject to Ameriprise's privacy policies. In no way can the franchise agreements and their Addenda be read to allow a carte blanche taking of any and all documents or information, as LPL claims and as LPL encourages, and as the users of the Bulk Upload Tool did.

What's more, if LPL and the relevant advisors really believed that the advisors were authorized to take this extensive information and give it to LPL when they resigned from Ameriprise, all they had to do was provide Ameriprise with a copy of the already filled out Bulk Upload Tool and let Ameriprise know that it contained all of the client information they were taking with them. But of course, that did not occur. LPL and the advisors in question sought to hide this misappropriation, and ultimately Ameriprise had to come to this Court to compel LPL to produce that information.

**B.** *An Unauthorized Disclosure Occurred, Necessitating the Breach Notice, Which Was Appropriate*

Based on the above alone, the registered representatives' use of the Bulk Upload Tool to share and retain voluminous customer information without customer

authorization and in violation of Ameriprise's Privacy Notice and applicable agreements constituted an unauthorized disclosure of sensitive customer data. However, there is even more support for the Notice.

### 1. LPL Tacitly Admits There Was A Breach

LPL tacitly admits there was a data breach by arguing that Ameriprise delayed in sending these breach notifications and has known about these breaches for years. *See* Memorandum, at 1-2. But as LPL and this Court already know, Ameriprise did not have the information to assess which former advisors committed a data breach nor which individuals were impacted until this Court ultimately forced LPL to turn over that information, which Ameriprise did not obtain until January 24, 2025 pursuant to the Stipulated Order.

LPL feigns shock that Ameriprise sent out data breach notifications, but again ignores the fact that both LPL and this Court already knew that Ameriprise was contemplating the need to send a data breach notification in light of the Stipulated Order, which expressly contemplates the fact that LPL would produce the Bulk Upload Tools so that Ameriprise could make a determination as to whether a data breach occurred and determine who was impacted, and if so, Ameriprise would send data breach notification letters. If sending a breach notification letter was so improper, why did LPL expressly agree in the Stipulated Order that Ameriprise could do it? For LPL to cry foul about this now signals bad faith.

### 2. All Of The Impacted Individuals Were Ameriprise Customers or Beneficiaries of Ameriprise Customers

All of the individuals who received the Notice were Ameriprise customers or beneficiaries of Ameriprise customers. The sensitive personal information for these individuals that was the subject of the breach notice was sourced from Ameriprise books and records and transmitted to LPL via the Bulk Upload Tools. Indeed, many of these individuals are still Ameriprise customers, despite LPL's bold assertion that

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

the advisors in question "retained [] their *own customers* information upon their transition from Ameriprise to LPL." *See* Memorandum, at 1-2. (emphasis in original). In other words, the fact that many of the customers at issue remained at Ameriprise and never left belies LPL's false assertion that these customers are the advisors' customers. And even though LPL advisors may have had business relationships with these customers, past or present, that does not entitle them to take confidential personal information about these individuals without authorization and share that information with another company.

As all of the impacted individuals were either customers of Ameriprise or beneficiaries of Ameriprise customers at the time of the breach, Ameriprise had an obligation to notify each and every one of them of the breach. As previously addressed with this Court, Ameriprise has a duty to its current and former customers to protect and safeguard their confidential information. This very Court has recognized this same duty in other financial industry cases—the "obligation" of a financial company to "protect the nonpublic personal information of its customers." *Erhart v. BofI Holding, Inc.*, 612 F. Supp. 3d 1062, 1119 (S.D. Cal. 2020); *see also In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 966 (S.D. Cal. 2014) (finding "<u>common sense and California</u>" law support "<u>a legal duty to safeguard a consumer's confidential information entrusted to a commercial entity</u>") (emphasis added).[6]

---

[6] *See, e.g.,* 15 U.S.C. § 6801 ("[E]ach financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information."); CAL. FIN. CODE § 4052.5 (providing that unless an exception applies, a "financial institution shall not sell, share, transfer, or otherwise disclose nonpublic personal information ... without the explicit prior consent of the consumer to whom the nonpublic personal information relates"); see also CAL. CIV. CODE § 1798.81.5(b) ("A business that owns or licenses personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure.").

DEFENDANT AMERIPRISE FINANCIAL SERVICES, LLC'S OPPOSITION TO PLAINTIFF LPL FINANCIAL LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

3.  The Customers Did Not Authorize Retention, Use, or Sharing Of The Information In Question

LPL claims that customers who actually did move to LPL with the advisors in question "necessarily authorized their advisors to retain, use, and share their information with LPL when they agreed to follow their advisors to LPL and open accounts there." *See* Memorandum, at 1. But this cannot be true. LPL cannot make the *post hoc* inference that because some customers followed these advisors to LPL they authorized the unsecure transfer, retention, use, and sharing of their sensitive personal information. Which information did the customers authorize the advisors to retain? In what ways were the advisors authorized to use this information? Importantly, where did the customers authorize that the advisors could store their sensitive information? With whom did the customers authorize the advisors to share their information?

Do these customers know that their advisors—and in some cases the advisors' assistants or other team members—may have transferred and may still possess confidential personal information relating to these customers and, in some cases, their account beneficiaries, stored on unsecured devices or repositories, such as the advisors' personal email accounts or physical devices? Doubtful. Do these customers know that the Bulk Upload Tools in which their sensitive information was retained were transmitted via unsecure personal email addresses, and may still reside in those email repositories?[7]

What's more, Ameriprise has learned that several of these advisors' unsecured email addresses have been identified as compromised email addresses to which unknown third parties have access through subsequent data breaches or hacking. *See* Declaration of J. Jorgensen, at paras 12-15. John Jorgensen is an independent forensic examiner whose declaration details the process by which he

---

[7] The Stipulated Order requires forensic review of the Bulk Upload Tool users' personal devices and digital repositories to ensure appropriate and permanent deletion of customer information from those advisors' personal possession.

DEFENDANT AMERIPRISE FINANCIAL SERVICES, LLC'S OPPOSITION TO PLAINTIFF LPL FINANCIAL LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER

identified whether the email addresses used to transfer the Bulk Upload Tools were compromised. *See id.* Many of the relevant email addresses have been compromised via one or more breaches or hacks, including three that had a combination of both the email address and password exposed to unknown third parties. *See id.* at paras 13-15. Mr. Schwartz, who filed a Declaration in Support of LPL's Motion for Temporary Restraining Order, is one such individual whose email address and password have been compromised in one or more hacks or data breaches, and therefore it is believed that unknown third parties had access to his email address. *See id.* at paras 14-15.

LPL's contention to this Court is that the retention, use and sharing of sensitive information has been authorized by these customers. Not so. The sensitive information associated with these impacted individuals, regardless of where their accounts are now, was sourced without authorization from Ameriprise books and records that were attached to Ameriprise customer relationships, and therefore Ameriprise had a duty to inform these individuals—much like this Court had previously recognized. Further, the customers certainly did not authorize any advisors, merely by means of transferring their accounts to the advisors at LPL, to retain their information on their personal devices or email repositories, which is why the Stipulated Order contemplates a review of such devices and repositories.

4. <u>The Notice Is Truthful And Appropriate</u>

As a threshold matter, the contents of the Notice sent by Ameriprise are truthful and accurate and do not constitute defamation. LPL takes issue with the fact that the introductory paragraph in the Ameriprise Notice differs from certain prior notices Ameriprise sent on different breach issues. Would LPL have really preferred that Ameriprise simply indicate in the Notice, as it suggests in its brief[8] "I am writing to inform you of an incident involving your personal information.

---

[8] *See* Memorandum, at 6-7.

Case No. 3:25-cv-0880-JO-MSB

DEFENDANT AMERIPRISE FINANCIAL SERVICES, LLC'S OPPOSITION TO PLAINTIFF LPL FINANCIAL LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

Unfortunately, it has been determined that there has been unauthorized access to your information."? Of course not. That would have created considerable confusion, particularly for former Ameriprise customers who are now LPL customers. Instead, Ameriprise appropriately included a simple factual reference to LPL – i.e., "*Your former Ameriprise Financial advisor left Ameriprise for LPL Financial…*" so recipients of the Notice would have the necessary context to understand what was being communicated to them. This is consistent with the thoughtful approach that Ameriprise takes in communicating with its customers, whether current or former.

Moreover, there is no requirement for Ameriprise to simply copy language of a prior notice on a different breach issue, nor does LPL get to dictate how, when, or why Ameriprise informs Ameriprise customers (whether current or former) on what happened to their data.

LPL tries to draw a distinction between verbiage used in the prior notice sent only to Ameriprise customers and language used in the Notice at issue, which was also sent to current customers of LPL. LPL fails to mention, however, that the Notice at issue in this case was sent with the same verbiage to *all impacted individuals*, whether they are current Ameriprise customers or otherwise.

LPL complains that Ameriprise refuses to tell LPL which LPL account holders the Notice was sent to or what the Notice actually said. This is misleading at best.

First and foremost, as Ameriprise has informed LPL, Ameriprise has no way of knowing who is or is not an LPL customer at this time. Second, Ameriprise is not simply going to give LPL—its competitor—a list of all Notice recipients, which would include many current Ameriprise customers. This is information LPL does not currently have. Ameriprise suspects that LPL wants this information so that it can use it to reach out to Ameriprise's customers. LPL already has the names of all Notice recipients because the names were sourced from the Bulk Upload Tools

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

DEFENDANT AMERIPRISE FINANCIAL SERVICES, LLC'S OPPOSITION TO PLAINTIFF LPL FINANCIAL LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER

produced by LPL to Ameriprise on January 24, 2025.  Third, Ameriprise has already given LPL a copy of the Notice sent to all customers. LPL knows exactly what the letter says. Importantly, Ameriprise has no way of knowing who LPL's customers are, and therefore cannot provide a list of such customers. As LPL already has all of the information contained within the Bulk Upload Tools, it could easily cross-reference that information against its own customer list if it felt so compelled.

LPL does not have to "correct Ameriprise's lie." Ameriprise did not lie. LPL states that "account holders are receiving Ameriprise's Notice and being falsely led to believe that their personal information was disclosed without authorization and is at risk." *See* Memorandum, at 2. The Notice does not say that the information is "at risk"—that is LPL's grandstanding. The Notice does, however, state that information was disclosed without authorization, which is the truth, as described above. At the time the advisors in question took the sensitive information and shared it with LPL, it was transmitted without the customers' authorization.  Moreover, as indicated above, Ameriprise referenced in the introductory paragraph of the Notice the advisors' transitions to LPL to provide objective and clear context to the Notice recipients.

Moreover, Ameriprise did not blindly send the Notice to impacted individuals. Ameriprise sent the Notice in compliance with the data breach laws of forty-seven states. *See* Declaration of Jennifer Swihart. All fifty states, the District of Columbia and Puerto Rico, have data breach laws that require organizations to notify individuals when a data breach affects their personal information ("PI"). The particular breach at issue in this case affected individuals in forty-seven different jurisdictions. The definition of protected PI varies by state, but at a minimum, state laws typically define PI to include an individual's first name or initial and last name, and in some cases other identifiers, when one or more of the following specified personal data elements is present:

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

DEFENDANT AMERIPRISE FINANCIAL SERVICES, LLC'S OPPOSITION TO PLAINTIFF LPL FINANCIAL LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER

- Social Security number;
- Driver's license or state identification card number; and/or
- Financial account, credit card, or debit card number in combination with any required security code, access code, or password that permits access to an individual's account.

Ameriprise meticulously applied the specific requirements of each jurisdiction to ensure proper notification. This involved understanding the breach notification requirements including the types of data triggering notification, the thresholds for notification, and the timelines for reporting breaches.

In addition to client name, address, email address, and phone number (data elements that would have been permissible for transition purposes had the advisors complied with the Protocol), the PI involved in this breach involved disclosure of the following categories of information for all impacted individuals: social security number, date of birth, and account number; and disclosure of bank account information for some impacted individuals. Along with the customer identities, the disclosure of these categories of PI constituted a data breach. *See* Declaration of Jennifer Swihart.

Accordingly, the Notice sent by Ameriprise was not only appropriate, but entirely truthful and its contents do not constitute defamation.

## III.   <u>Legal Standard</u>

To obtain injunctive relief, LPL must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to plaintiff without preliminary relief; (3) that the balance of equities favors it; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). As the Court knows, injunctive relief is an "extraordinary remedy"; accordingly, it may be awarded only "upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. "This 'clear showing' requires factual support beyond the

DEFENDANT AMERIPRISE FINANCIAL SERVICES, LLC'S OPPOSITION TO PLAINTIFF LPL FINANCIAL LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

allegations of the complaint." *CI Games S.A. v. Destination Films*, No. 16-cv-05719, 2016 U.S. Dist. LEXIS 189118, at *35 (C.D. Cal. Oct. 25, 2016) (citing *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984)).

When a party fails to submit sufficient evidence to substantiate its allegations, as here, its request for relief fails. *See Takiguchi v. MRI Int'l, Inc.*, 611 F. App'x 919, 921 (9th Cir. 2015) ("[T]he mere allegations of a complaint will never suffice to establish the prerequisites for obtaining a preliminary injunction[.]").

"Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction . . .. Accordingly, the moving party must *first demonstrate that such injury is likely* before other requirements for the issuance of an injunction will be considered." *Amylin Pharms., Inc. v. Eli Lilly & Co.*, No. 11-CV-1061, 2011 U.S. Dist. LEXIS 125993, *3 (S.D. Cal. Jun. 8, 2011) (emphasis added). "Conclusory affidavits are insufficient to demonstrate irreparable harm." *Suzhou Angela Online Game Tech. Co. v. Snail Games USA, Inc.*, No. 21-cv-09552, 2022 U.S. Dist. LEXIS 20164, at *19 (C.D. Cal. Jan. 31, 2022) (citing *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985)). Further, LPL seeks a mandatory injunction: the provision of information to LPL. Dkt. 1 at 22. *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) ("A mandatory injunction orders a responsible party to take action.") (quotation marks and citation omitted). Mandatory injunctions are "particularly disfavored," "are not granted unless extreme or very serious damage will result[,] and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Id.* (quotation marks and citations omitted). A movant seeking a mandatory injunction faces a heightened burden of proof, and its request should be denied "unless the facts and law clearly favor the moving party." *Coltharp v. Herrera*, 584 F. App'x 334, 336 (9th Cir. 2014) (citation omitted).

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

## IV.  **Argument**

Ameriprise has not made any defamatory statements. More importantly for the purposes of this Court's evaluation of LPL's Motion, and aside from any outreach Ameriprise may receive from impacted individuals in response to the Notice, Ameriprise does not currently plan on making any further statements regarding the data breach to the individuals identified on the Bulk Upload Tools. Ameriprise already sent its Notice on April 8, 2025 as contemplated by the Stipulated Order, fulfilled its obligations to its customers (current and former), and complied with the data breach laws of 47 states. Therefore, on this point, there is no conduct for the Court to enjoin.

Moreover, there is no requirement that Ameriprise provide to LPL the identities of the individuals to whom it sent Notices. LPL is essentially seeking discovery—which it can get later in the underlying FINRA arbitration case—via the extraordinary remedy of a public temporary restraining order. LPL undercuts its request by its admission in its own brief that the information it seeks as part of its requested injunctive relief is discoverable: "[t]he information which LPL asks the Court to order Ameriprise to provide, is information which would be the appropriate subject of discovery in this action." See Memorandum, at 18. Further, if LPL's customers are raising concerns, LPL can—as it has already likely done—assuage those concerns.[9] The mandatory injunction sought by LPL is an extreme remedy and is not appropriate given the circumstances.

First, as the Notice was contemplated by both parties in the Stipulated Order, and it was not defamatory, LPL has no likelihood of succeeding on its merits. Second, there is no harm here, let alone irreparable harm. As the Notice was already sent, there is no threat of immediate irreparable harm, and providing the names of

---

[9] However, any communication by LPL that interfere with the spirit of the breach notification or disparages Ameriprise would be grounds for intervention by the Court.

DEFENDANT AMERIPRISE FINANCIAL SERVICES, LLC'S OPPOSITION TO PLAINTIFF LPL FINANCIAL LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

individuals to whom the Notice was sent does nothing to prevent future harm, if any, to LPL. Third, as the Notice was contemplated by the Stipulated Order and its contents were truthful it would be inequitable to enter a public injunctive order against Ameriprise ordering it to reveal the identities of even its own customers to LPL, as LPL seeks. Alternatively, as Ameriprise has no way of knowing which of the individual recipients are currently customers of LPL, Ameriprise could not comply with even a "narrow" order. Fourth, and finally, an injunction requiring Ameriprise to turn over the names of its customers can hardly be said to serve the public interest. These arguments are set out in more detail below.

   1. *LPL Has Not Shown That It Is Likely To Succeed On The Merits Of Its Claims*
   A. The Notice Was Not Defamatory

LPL is not likely to prevail on its defamation claim because the Notice was not false or defamatory in any way, nor did it cause any injury or special damage. As a threshold, LPL lacks standing to even bring a claim for defamation, as none of the statements within the Notice were about LPL itself, other than the contextual and factual statement that the customers' financial advisor at one point left Ameriprise to join LPL. Therefore, Ameriprise did not make any statement about LPL, false or otherwise. The statements within the notice that LPL complains about were regarding the actions of the individual financial advisors at issue.[10]

In any event, to succeed on its defamation claim, LPL must prove that Ameriprise's notice contained a "false and unprivileged publication that exposes the plaintiff to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 112, 64 Cal. Rptr. 3d 467, 478 (2007) (quoting Civ. Code, § 45.). LPL is not being ridiculed, shunned, or

---

[10] Of course, LPL encouraged and was complicit in that wrongdoing, but Ameriprise did not inform customers of that misconduct in the Notice.

avoided—nor is it being injured.

Further, a statement is only defamatory when it tends "directly to injure [a person] in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, trade, profession, or business that has a natural tendency to lessen its profits[.]" *see id.* (quoting Civ. Code, § 46, subd. 3.). Nothing in Ameriprise's Notice "imputed general disqualification" as to what LPL's "occupation peculiarly requires." Further, nothing in the Notice imputed something that has a "natural tendency to lessen [LPL's] profits."

Accordingly, no defamatory statement exists, and LPL cannot hope to succeed on the merits of its defamation claim.

B. The Statements Within The Notice Are Privileged

Ameriprise enjoys qualified privilege in sending its data breach notification. A breach notification issued under a legal duty would be viewed as occurring on a "privileged" occasion. Under the doctrine of qualified privilege, a statement made in the performance of a legal, moral, or social duty to a party with a corresponding interest is protected from defamation liability (absent malice). Breach notices clearly fit this paradigm: the organization has a legal duty to warn affected individuals or regulators, and the recipients (whether the individuals whose data was breached, or authorities overseeing data protection) have a legitimate interest in the information. *See Swift & Co. v. Gray*, 101 F.2d 976, 980 (9th Cir. 1939); *Easley v. Ameriprise Fin., Inc.,* 2020 WL 5881820, at *4 (D. Nev. Sept. 11, 2020) (finding data breach notice to be privileged). In *Swift*, the Court stated that the "general rule on the question of qualified privilege" is as follows:

> Qualified privilege relates to private interests; and comprehends communications made in good faith, without actual malice, with reasonable or probable grounds for believing them to be true, upon a subject matter in which the author of the communication has an interest,

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

or in reference to which he has a duty, public, personal, or private, either legal, judicial, political, moral, or social, made to a person having a corresponding interest or duty.

*Swift*, 101 F.2d, at 980.

In this case, Ameriprise made a good faith breach notification without actual malice and had reasonable and probable grounds for believing its statements to be true. Further, Ameriprise made its statements in reference to a legal duty—pursuant to the laws of 47 states—as well as private and moral duties to its customers. Accordingly, the statements within the Notice enjoy qualified privilege and therefore cannot form the basis for claims of defamation or tortious interference.

C. The Notice Was Truthful, and Truth is an Ultimate Defense To A Defamation Claim

The statements contained within the Notice sent by Ameriprise are all true, and an essential component of a defamation claim is the existence of falsehood. *See Reed v. Gallagher*, 248 Cal. App. 4th 841, 855 (2016)). Substantial truth thus constitutes a defense to claims of defamation and intentional interference based on allegedly injurious falsehoods under California law. *See Carver v. Bonds*, 135 Cal.App.4th 328, 344 (2005) ("California law permits the defense of substantial truth, and thus a defendant is not liable if the substance of the charge be proved true.") (internal quotation marks omitted).

The first statement that LPL claims is false is that the advisors in question "shared certain confidential personal information about you and your account(s) that exceeded the limited scope of information your former advisor was permitted to use for transition purposes" and that the permissible scope was limited to "name, address, email address, phone number and account title." *See* Memorandum, at 11 (citing Notice). These statements, however, are demonstrably true. The advisors in question did in fact share confidential information relating to Ameriprise customers with LPL without prior authorization of those customers. The information shared far

18

Case No. 3:25-cv-0880-JO-MSB

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

exceeded the scope allowable under the Privacy Notice, which is the customer-facing document; customers do not see and are not privy to the terms of the advisors' agreements with Ameriprise. The permissible scope allowable by the Privacy Notice, and indeed by the Protocol, is limited to those five categories of information. For the reasons stated above in Subsection II.A,[11] the Addenda do not control anyway and do not allow the advisors in question to take the information they took.

The second statement contained within the Notice that LPL claims is false is that Ameriprise "recently became aware of this unauthorized disclosure." *See* Memorandum, at 12 (citing Notice). This Court already knows that the statement in the Notice is true and accurate. The whole reason Ameriprise came to this Court last year was to identify the users of the Bulk Upload Tools and identify the customers whose information may have been misappropriated. Only through its action before this Court did Ameriprise obtain from LPL that critical information. All Ameriprise knew before the production of the Bulk Upload Tool in September of 2024 was that LPL provided a tool to advisors to store and take customer information. Without obtaining the identities of the relevant financial advisors and without obtaining the Bulk Upload Tools themselves, Ameriprise could not have possibly known to whom it was required to send breach notifications.

As none of the statements alleged to be false are actually false, but are instead true or at least substantially true, they cannot be considered defamatory and LPL's claim yet again fails.

These statements do not have a natural tendency to injure LPL. A statement is actionable only when it is "of and concerning" the plaintiff. *See Dickinson v. Cosby*, 37 Cal. App. 5th 1138, 1160, 250 Cal. Rptr. 3d 350, 367 (2019). This requirement limits the right of action to those who are the direct object of a statement and denies

---

[11] *See supra* pages 3-7.

DEFENDANT AMERIPRISE FINANCIAL SERVICES, LLC'S OPPOSITION TO PLAINTIFF LPL FINANCIAL LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER

1  it to those who complain of nonspecific statements that they feel caused them harm.

2      To satisfy the "of and concerning" requirement, a plaintiff must show the

3  statement "expressly mentions her or refers to her by reasonable implication."

4  (quoting *Blatty v. New York Times Co*. (1986) 42 Cal.3d 1033, 1046, 232 Cal.Rptr.

5  542, 728 P.2d 1177). The statements identified by LPL do not expressly identify

6  LPL as having done anything.

7      Further, a plaintiff must also show the statement was understood by at least

8  one third person to have concerned the plaintiff. *See Bartholomew v. YouTube*, LLC

9  (2017) 17 Cal.App.5th 1217, 1231, 225 Cal.Rptr.3d 917; *see Neary v. Regents of*

10 *University of California* (1986) 185 Cal.App.3d 1136, 1147, 230 Cal.Rptr. 281

11 ("For publication to occur the defamatory matter must be communicated to a third

12 party who understands the defamatory meaning and its applicability to the

13 plaintiff.").

14     Importantly, none of the declarations submitted by LPL in this matter indicate

15 that anybody interpreted any of the statements to be about LPL. None of the

16 Declarations contain any reference—which would constitute hearsay anyways—to

17 either himself or any clients he services interpreting any of the statements made in

18 the Notice to be about LPL.

19     Because the statements LPL places at issue are not "of and concerning" LPL,

20 and because LPL has offered no proof that the statements were interpreted to be

21 about LPL, LPL has not been damaged at all and further has no right to bring a

22 defamation claim.

23     Based on the foregoing, LPL is not likely to succeed on the merits of its

24 defamation claim, and therefore its requested relief should be denied.

25   D. <u>Ameriprise Did Not Tortiously Interfere With LPL's Customer Relationships</u>

26     Generally, "if a defendant's conduct was lawful and undertaken to enforce its

27 rights, it cannot be held liable for intentional interference with a contract even if it

28

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

DEFENDANT AMERIPRISE FINANCIAL SERVICES, LLC'S OPPOSITION TO PLAINTIFF LPL FINANCIAL LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

knew that such conduct might interrupt a third party's contract." *SIC Metals, Inc. v. Hyundai Steel Co.*, 442 F. Supp. 3d 1251, 1256 (C.D. Cal. 2020). This principle alone suggests that LPL is not likely to succeed on the merits of its tortious interference claim.

Ameriprise took reasonable steps and made a good faith determination that a data breach notice must be sent based on its lawful compliance with the data breach laws of forty-seven states. LPL's allegation is that "Ameriprise tortiously interfered with LPL's relationship with its customers when it sent the Notice." *See* Memorandum, at 15. But Ameriprise has already established that LPL agreed in the Stipulated Order that Ameriprise could send a data breach notification after its review of the Bulk Upload Tools. LPL's position is one of bad faith. Either it negotiated the Stipulated Order while planning to sue Ameriprise in the future for sending a data breach notification, or it is suing Ameriprise for sending a data breach notification despite its prior agreement via Stipulated Order contemplating the same.

LPL ignores that Ameriprise sent the same Notice to all impacted individuals—not just customers of LPL. Ameriprise did not target LPL's customers. Ameriprise does not know who is or is not a customer of LPL. Ameriprise certainly did not act intentionally to disrupt any relationship between a customer and LPL, and LPL has barely even pled, let alone proven, any disruption. Claims for tortious interference fail where parties cannot prove actual disruption. *See Edo Reconnaissance & Surveillance Sys., Inc. v. Phoenix Logistics, Inc.*, No. 05-02789JF(PT), 2006 WL 2038058, at *9 (N.D. Cal. July 17, 2006) (granting motion to dismiss where movant failed to "specify any actual disruption of the particular relationships with the named foreign countries or show how economic harm resulted from the alleged interference."); *LucasArts Ent. Co. v. Humongous Ent. Co.*, 870 F. Supp. 285, 291 (N.D. Cal. 1993) (granting motion for summary judgment "on the ground that Electronic Arts has failed to show any evidence of actual disruption.").

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

LPL merely makes the conclusory statement that its "relationships were actually disrupted by the Notice", but it does not explain how. *See* Memorandum, at 16. LPL does not allege that customers have made complaints about LPL, nor does it allege that customers have terminated their relationship. No actual disruption has occurred. Additionally, nor has any economic harm befallen LPL.

Not only has LPL failed to show or prove actual disruption, but even if it had, LPL has utterly failed to demonstrate how it has suffered or will suffer any economic harm. LPL knows this, which is why it largely ignores this critical element. LPL's analysis as to economic harm is as follows: "[f]inally, there has been economic harm to LPL. As discussed below, LPL's goodwill has been . . . damaged." LPL does not even allege that it is Ameriprise or Ameriprise's actions that have caused the economic harm, nor does it identify what the harm is. LPL simply refers to its goodwill, which has not been damaged; but even if it had, that is not an economic harm.

Accordingly, LPL has no likelihood of succeeding on the merits of its tortious interference claim, which is bound to fail for the foregoing reasons.

2. *LPL Has Not Suffered, And Will Not Suffer, Irreparable Harm In The Absence Of An Injunction*

This Court's analysis can begin and end with LPL's failure to establish that it is likely to suffer irreparable harm. *See Singleton v. Kernan*, No. 16-cv-02462, 2017 U.S. Dist. LEXIS 180549, *8 (S.D. Cal. Oct. 31, 2017) ("Where a plaintiff fails to demonstrate a likelihood of irreparable harm without preliminary relief, the court need not address the remaining elements of the preliminary injunction standard.") (citing *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011)). LPL fails to meet its burden for at least four reasons, set forth below.

There is no threatened or immediate irreparable harm here requiring injunctive relief. Ameriprise already sent the Notice. Ameriprise is not going to send

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

1   another Notice. What conduct is there for the Court to enjoin? Even if there was

2   continuing irreparable harm—which there is not—an injunction requiring

3   Ameriprise to provide the names of the recipients of the Notice does nothing to

4   address that alleged irreparable harm.

5          For the Court to find irreparable harm exists here, the Court must find that the

6   Notice was defamatory specifically as to LPL, which it was not, and that the

7   allegedly defamatory nature of the Notice resulted in cognizable damage to

8   customer goodwill, which it did not. Again, the Notice does not even claim that LPL

9   did anything wrong. Though, of course, Ameriprise has alleged in the related

10   lawsuit that LPL did engage in misconduct by providing the Bulk Upload Tool to

11   the advisors in the first place with instructions to improperly take all of this sensitive

12   information at issue.  However, the Notice sent to customers does not contain that

13   information, which still would have been true. The Notice was intended to be

14   facially neutral, and it was.

15          Moreover, LPL's alleged "injuries," even if taken at face value, are entirely

16   speculative. The Ninth Circuit has held that "[s]peculative injury does not constitute

17   irreparable injury sufficient to warrant granting a preliminary injunction."

18   *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). Here,

19   LPL's allegation is the height of unsupported speculation, as it refers vaguely to the

20   alleged loss of customer goodwill based on allegedly defamatory statements that are

21   not even specifically related to LPL. *See Regions Bank*, 2020 U.S. Dist. LEXIS

22   221452, at *12 (rejecting alleged harm from advisor's departure with customer

23   information as "mostly speculative"). Accordingly, LPL has not demonstrated that it

24   has suffered or will suffer irreparable harm and, on those grounds, alone its motion

25   fails.

26

27

28

DEFENDANT AMERIPRISE FINANCIAL SERVICES, LLC'S OPPOSITION TO PLAINTIFF LPL FINANCIAL LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER

### 3. *The Balance of Equities Weighs In Favor Of Denying LPL's Motion For Temporary Restraining Order*

This Court's balancing of the equities reaffirms that an injunction should not be granted here. There is no harm to LPL to even balance. Ameriprise sent a data breach notification, which was contemplated by the parties in the Stipulated Order, and the Notice itself was truthful and accurate.

On the other hand, entry of an injunctive order, particularly a mandatory one requiring Ameriprise to take some action, is an extraordinary remedy. Moreover, as drafted, the relief sought by LPL would require Ameriprise to identify all customers who received the Notice, including Ameriprise customers, which is frankly none of LPL's business.

### 4. *Entry Of An Injunction Would Not Serve The Public Interest*

The Notice itself served the public interest. An injunction would not. The Notice identified that advisors took more information than authorized and brought it to LPL. That is particularly concerning for customers, particularly for customers of Ameriprise who never authorized that data to be taken out of Ameriprise. Ameriprise was not required to create different breach notifications for customers and non-customers.

Further, regardless of whether the recipients are customers of LPL and have since authorized LPL to safeguard their information, the customers are entitled to know that their information might have once been at risk or could still be at risk.

Accordingly, the public interest would not be served by entry of an injunction.

## V.   **Conclusion**

Based on the foregoing, Ameriprise respectfully requests that the Court deny LPL's Motion for Temporary Restraining Order.

DEFENDANT AMERIPRISE FINANCIAL SERVICES, LLC'S OPPOSITION TO PLAINTIFF LPL FINANCIAL LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER

1

SHUMAKER, LOOP & KENDRICK, LLP

2  DATED:  April 18, 2025       By:      s/ Michael S. Taaffe

3                                        Michael S. Taaffe

4                                        Attorneys for Plaintiff AMERIPRISE
                                         FINANCIAL SERVICES, LLC

5

6                                KLINEDINST PC

7

8  DATED:  April 18, 2025       By:      s/ Daniel S. Agle

9                                        Greg A. Garbacz
                                         Daniel S. Agle
10                                       Attorneys for Plaintiff AMERIPRISE
                                         FINANCIAL SERVICES, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

DEFENDANT AMERIPRISE FINANCIAL SERVICES, LLC'S OPPOSITION TO PLAINTIFF LPL FINANCIAL
LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER

# CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*s/ Maria E. Suarez-Lopez*

DEFENDANT AMERIPRISE FINANCIAL SERVICES, LLC'S OPPOSITION TO PLAINTIFF LPL FINANCIAL LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101